UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKEAL THOMAS VANHORN,

    Plaintiff,                                       Civil Action No. 09-CV-14940

vs.                                               HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION, GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT and DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the court on the parties' cross motions for summary judgment. Magistrate Judge Mark A. Randon has submitted a Report and Recommendation ("R&R") in which he recommends that plaintiff's motion be denied and defendant's motion be granted. No objections to the R&R have been filed. Having reviewed the R&R, the parties' motions and the administrative record, the court shall reject the R&R, grant plaintiff's motion in part, deny defendant's motion, and remand the matter for further proceedings.

Plaintiff claims he has been unable to work since December 2005 because of the combined effects of carpal tunnel syndrome, a seizure disorder, and leg and ankle pain. The ALJ found that plaintiff "has the following severe impairments: carpal tunnel syndrome, seizures, head injury, and leg pain" (Tr. 35). He also found that plaintiff is unable to perform his past work as an assembler or inspector on an automobile assembly line or as a teacher's aide, but that he can perform a limited range of unskilled, sedentary work (Tr. 38). Specifically, the ALJ found that plaintiff could work as an information clerk and, based on testimony from the vocational expert ("VE"), that

88,000 such jobs exist in the national economy (Tr. 39). On this basis, the ALJ concluded that plaintiff is not disabled.

In reviewing a denial of Social Security disability insurance benefits, the court's role is limited under 42 U.S.C. § 405(g) to determining whether defendant's decision is supported by substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination, the court does not review the matter *de novo*, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence also would have supported a contrary decision and even if the court may have decided the case differently in the first instance. If defendant's decision is not supported by substantial evidence, the court must remand the matter either for further administrative proceedings or for an award of benefits.

Since the ALJ found in the present case that plaintiff cannot perform his past work, the burden has shifted to defendant to prove the existence of other jobs plaintiff can perform. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). And since the ALJ also found that plaintiff cannot perform a full range of sedentary work, this burden can be carried only by VE testimony in response to a properly framed hypothetical question. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990). As the Sixth Circuit has explained, the hypothetical question is valid only if it "'accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), *quoting Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984). "This means that the question must 'reference all of a claimant's limitations,' though it need not contain a list of the claimant's medical conditions."

*Turner v. Comm'r of Soc. Sec.*, 381 Fed.Appx. 488, 494 (6th Cir. 2010), *quoting Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir.2004).

> In the present case, the following colloquy occurred between the ALJ and the VE:
>
> Q. . . . I'd like you to assume a person aged 37 with a high school education. Further assume I find the person in the first question capable of a limited range of sedentary work. And the second question a limited range of light work. That all the other restrictions remain the same for both questions. And the rest of the question is that the position should be restricted as follows. This should never require what I call industrial climbing of ropes, ladders, and scaffolds. Never require balancing. But could occasionally require other climbing, stooping, kneeling, crouching, and crawling. Should avoid vibration and hazardous machinery and heights. Should involve only simple repetitive tasks and instructions. And be positions where it involved, would be low stress type positions. I'd ask if there would be any positions available for such a person?
>
> A. There would be. In the sedentary, unskilled category examples would include inspector. The national number for that is approximately 11,000. Information clerk, approximately 88,000. Order clerk, 27,000. In the light, unskilled category assembler. This is a reduced number, approximately 250,000. Inspector, 96,000, and cleaner, 72,000.
>
> Q. All right. And these are all found in the DOT?
>
> A. Yes.
>
> \* \* \*
>
> ALJ. All right. Ms. Tremblem, I'm going to ask another hypothetical question also, which is a refinement of this one. I'm just going to add another restriction, I guess I would say. If we add to both of these a restriction away from – well, alone let me say only occasional fine manipulation with both hands. Would that make any difference on these jobs that you have mentioned? And this would be that question three [sic].
>
> VE. Fine – in the sedentary category it would have no affect [sic] on the information clerk. It would eliminate the inspector position, the order clerk, it would also eliminate the order clerk. In the light

3

>unskilled category, the assembler, it would eliminate all but approximately 10%. It would have no affect [sic] on the cleaner position and it would have no affect [sic] on the inspector position in the light category.

(Tr. 18-20.) As noted above, the ALJ found plaintiff to be not disabled based on the VE testimony that 88,000 unskilled, sedentary information clerk jobs exist which the hypothetical person could perform notwithstanding the additional restriction regarding "only occasional fine manipulation with both hands." As the ALJ did not find plaintiff capable of performing any of the other unskilled, sedentary jobs identified by the VE in response to the first hypothetical question, the ALJ apparently found that only the final hypothetical question described plaintiff's residual functional capacity.

The hypothetical question is insufficient, and the answer thereto fails to provide substantial evidence to support the ALJ's ultimate conclusion, for at least two reasons. First, the question fails to incorporate any findings regarding the side effects of plaintiff's medications. In fact, the ALJ's decision contains no mention – let alone analysis and discussion – of this important issue. At the hearing, plaintiff testified that to control his seizures he takes "Trileptal, 600 milligrams, 1 in the morning and 2 in the evening. I take Lamictal, 200 milligrams the same way, 1 in the morning and 2 p.m. I take Keppra, a 1000 milligrams, 1 a.m., and 2 p.m." (Tr. 9-10). In response the ALJ commented, "[T]hey certainly are hitting you with quite a few things but if that's what it takes then that's good" (Tr. 10). Plaintiff also testified that he has tried various medications for migraine pain, including Nortriptyline, to which the ALJ commented: "Yeah, that's one of the ones they start with and lots of times it works, lots of times doesn't. Makes people drowsy though. But you're probably drowsy anyway with all this other stuff you're taking," to which plaintiff responded: "Yeah, because on top of that I take Vicodin, 750 milligrams as needed for my ankle and the carpal tunnel" (Tr. 14). In response to questioning from his attorney, plaintiff testified that he

4

takes one or two naps per day, and usually two, and that each lasts from two to three hours (Tr. 16). The VE testified that all work would be precluded by a person's need to lie down or nap longer than is allowed for breaks (two 15-20 minute periods) and lunch (from 20 to 45 minutes)  (Tr. 19).

The record is replete with references to the many medications plaintiff takes to control his seizures and pain. *See, e.g.,* Tr. 137, 142, 153, 157, 159-62, 200, 214-15, 217, 333, 375-79.  Dizziness and drowsiness are known side effects of several of these medications.[1]  The ALJ freely acknowledged at the hearing that plaintiff's physicians are "hitting you with quite a few things" (Tr. 10) and that plaintiff, even without taking any medication for his migraines, is "probably drowsy anyway with all this other stuff you're taking" (Tr. 14).   One of plaintiff's treating physicians has noted that plaintiff "reports feeling 'drugged' and lethargic, some times with some disequilibrium, for several hours after taking his morning medications" (Tr. 377) and that he is "drowsy and lethargic, with episodes of diplopia and blurred vision" (Tr. 157).

Under these circumstances, it was clear error for the ALJ to fail to consider the side effects of plaintiff's medications in assessing his residual functional capacity and to incorporate

---

[1] While the court is in no position to make factual findings and does not intend to do so here, information on these drugs is readily available and could have been easily reviewed by the ALJ.  *See, e.g.,* http://www.drugs.com/sfx/keppra-side-effects.html (identifying "**[d]izziness**; **drowsiness**; irritability; sore throat; tiredness; weakness" as Keppra's common side effects); http://www.drugs.com/sfx/lamictal-side-effects.html (identifying "[b]lurred or double vision; constipation; decreased coordination; diarrhea; **dizziness**; **drowsiness**; headache; nausea; painful menstrual periods; runny or stuffy nose; stomach upset or pain; tiredness; trouble sleeping; vomiting; weakness; weight loss" as Lamictal's common side effects); http://www.drugs.com/sfx/trileptal-side-effects.html (identifying "[a]cne; constipation; **dizziness**; **drowsiness**; dry mouth; headache; indigestion; nausea; stomach pain; tiredness; tremor; trouble sleeping; unusual walk; vomiting" as Trileptal's common side effects; http://www.drugs.com/sfx/vicodin-side-effects.html (identifying "[b]lurred vision; constipation; difficulty breathing; **dizziness**; **drowsiness**; flushing; lightheadedness; mental/mood changes; nausea; vomiting" as Vicodin's common side effects) (emphasis added).

these findings into his hypothetical question(s). *See White v. Comm'r of Social Sec.*, 312 Fed.Appx. 779, 789-90 (6th Cir. 2009) (remanding for further proceedings because, among other reasons, the ALJ's hypothetical question to the VE "did not account for the side effects of the pain medication"); *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (noting that "side effects of any medication taken to alleviate the symptoms" must be considered in assessing plaintiff's ability to work). On remand, defendant must consider the evidence[2] regarding the side effects of plaintiff's medications, make specific findings regarding the impact of these side effects on plaintiff's ability to work, and incorporate these findings into a proper hypothetical question to a VE.

The second error lies in the fact that the ALJ made no specific findings, or even discussed the relevant evidence, to support the critical restriction in his final hypothetical question – namely, that plaintiff is capable of "occasional fine manipulation with both hands" (Tr. 20). *See also* Tr. 36 ¶ 5 (finding plaintiff capable of a limited range of sedentary work with the restriction of "limited fine manipulation"). Related and equally important errors are the ALJ's failure to define "only occasional" for the VE or to verify that the information clerk jobs identified by the VE in response to this hypothetical question require "only occasional fine manipulation."

The obvious reason for this restriction is that plaintiff suffers from bilateral carpal tunnel syndrome ("CTS"), as the ALJ found. However, the ALJ utterly failed to explain the basis for his conclusion that plaintiff's CTS permits him to do even occasional fine manipulation as part

---

[2] It will be for defendant to determine on remand whether the record has been sufficiently developed to make such findings. The court notes, however, that the ALJ neglected to question plaintiff carefully about the nature, severity and duration of his side effects and that the references thereto in the medical records are sparse. Defendant must consider whether the record should be further developed, e.g., by taking additional testimony from plaintiff, requesting additional information from plaintiff's treating physicians and/or obtaining an independent medical expert's opinion.

of full-time work. The ALJ's only discussion of plaintiff's CTS is found in the first few lines of the third full paragraph at page 5 of his decision:

> In terms of the claimant's allegations, on May 1, 2006, Jeffrey R. Levin, M.D., diagnosed the claimant with cts. Dr. Levin noted the claimant had cts surgery for both his hands, including cts release for his right hand in 2003. (2F). [O]n August 21, 2006, Wilbur J. Boike, M.D. found the claimant had symptoms of bilateral cts, but noted his hand numbness was not as bothersome as before.[3] Further, the claimant was restricted from performing any forceful or repetitive gripping activities, and using air guns and tools with vibration. (4F). Delphi human resources restricted the claimant from using vibrative tools, performing any repetitive pushing and pulling, only lifting a maximum of 10 pounds, and no climbing or driving. (9F).

(Tr. 37.) Although the ALJ commented at the hearing that plaintiff was wearing braces on both wrists (Tr. 14), in his decision he made no mention of this fact, nor did he acknowledge plaintiff's hearing testimony that

> . . . I take Vicodin, 750 milligrams as needed for my ankle and for the carpal tunnel. . . . I use a Thermo-a-For (Phonetic), which is moist heating pad. I use a TENS unit for electrical stimulation in my hands. Biofreeze, which is, you know, like a heated rub. I use Aparifinda (Phonetic) which is . . . like a wax they would use it for women's nails or women's hands, but it's for heat. It's the same thing they use in physical therapy. And I start physical therapy again – . . . I was supposed to go today and we had to reschedule it.

---

[3] This is true but a bit misleading. The full sentence to which the ALJ refers states: "At this point, Mr. VanHorn reports intermittent bilateral hand numbness, which is not as bothersome as previously, since going off work on 12/21/05" (Tr. 199). Dr. Boike's report is dated August 21, 2006. It is not surprising that plaintiff's hand numbness had improved eight months after stopping his job at Delphi, where his work was "very hand intensive and, in fact, he used his right hand 'like a hammer'" (Tr. 199). However, the mere fact that the numbness was "not as bothersome as previously" does not establish that it has diminished to the point where it is compatible with the type of work identified by the VE, or indeed any work involving "fine manipulation." Hand numbness, depending on its severity and frequency, would obviously affect a person's ability to do any job involving fine motor skills.

7

(Tr. 14-15.) Other evidence in the record which the ALJ did not mention in his decision includes the following: (1) statements by plaintiff on his hand-written "Function Report" regarding the severity of the pain in his hands and activities he cannot engage in; that he wears hand splints and uses a TENS unit, a heating pad and paraffin dip for his hand pain; and that because of his hand pain he needed *three days to complete the form* (Tr. 119-26); (2) Dr. Levin's finding that plaintiff's "nerve conduction studies . . . [were] remarkable for electrodiagnostic evidence of bilateral median neuropathies at the wrists (i.e., carpal tunnel syndrome)" (Tr. 200); (3) the wrist splints were prescribed by one of plaintiff's treating physicians (Tr. 265-67); and (4) plaintiff submitted an insurance claim alleging that his hands and arms "fall asleep, they burn, tingle, swell at times . . . severe pain in hands, wrists + also up the arm . . ." (Tr. 274).

There is no logical connection between the evidence regarding plaintiff's bilateral CTS and the ALJ's unexplained finding that plaintiff is capable of "limited fine manipulation." On remand, defendant must (1) consider all of the evidence, including plaintiff's written material and hearing testimony, regarding his CTS; (2) make explicit findings regarding the nature and severity of plaintiff's CTS symptoms, including pain and numbness in his hands, wrists and arms; and (3) include these findings in the RFC assessment and in a proper hypothetical question to the VE.

One other related error must also be corrected on remand. The error concerns the ALJ's use of the phrase "occasional fine manipulation with both hands" (Tr. 20). The ALJ did not define what he meant by "occasional fine manipulation" and there is no way of knowing whether the ALJ's and VE's understandings of the phrase were the same.[4] For the same reason, there is no

---

[4] In his summary judgment motion, plaintiff notes that the Dictionary of Occupational Titles ("DOT") defines "occasionally" as referring to an "activity or condition [that] exists up to 1/3 of the time." *See* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

8

way of knowing or reviewing whether plaintiff is capable of performing any of the information clerk jobs identified by the VE, as the ALJ made no findings regarding plaintiff's CTS symptoms and the VE did not explain the nature and extent of the "fine manipulation" required by the information clerk jobs she identified. On remand, defendant must make specific findings regarding plaintiff's ability to use his hands and fingers for fine manipulation (i.e., the severity and duration of pain, numbness, tingling, etc.) and include those findings in a properly framed hypothetical question. In addition, the VE must explain the precise tasks an "information clerk" job entails, how often "fine manipulation" is required, and whether a person with plaintiff's symptoms can do such work.[5] Accordingly,

IT IS ORDERED that the magistrate judge's R&R is rejected.

---

There is no way of knowing whether the ALJ or the VE used this definition in this case.

[5] As plaintiff correctly states in his summary judgment motion, the DOT lists more than one kind of "information clerk." Plaintiff notes two, but in fact the DOT lists the following:

> INFORMATION CLERK (clerical) 237.367-022
> INFORMATION CLERK (motor trans.; r.r. trans.; water trans.) 237.367-018
> INFORMATION CLERK, AUTOMOBILE CLUB (nonprofit org.) 237.267-010
> information clerk, brokerage (financial) 237.367-046
> INFORMATION CLERK-CASHIER (amuse. & rec.) 249.467-010

*See* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTALPHA.HTM. Of these, only the first, third and fourth have "strength ratings" of sedentary; the second and fifth are rated as light. All three of the sedentary information clerk jobs require "specific vocational preparation (SVP)" time ranging from one month to one year and do not, on their face, appear to qualify as "unskilled." On remand, if the VE identifies "information clerk" jobs in response to the ALJ's hypothetical question(s), she must clearly indicate which information clerk jobs she means, along with the exertional level involved, the amount of training required, and the extent to which plaintiff's CTS symptoms, as found by the ALJ, may interfere with the performance of such work.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted in part and this matter is remanded to defendant Commissioner of Social Security for further proceedings as indicated above.

        S/Bernard A. Friedman_____
        BERNARD A. FRIEDMAN
        SENIOR UNITED STATES DISTRICT JUDGE

Dated: January 7, 2011
      Detroit, Michigan